UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIFFANY G., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 19-CV-605-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,**[1] | ) |
| | ) |
|     **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. For the reasons set forth below, the Commissioner's decision is **affirmed**.

**I.**     **Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S.Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

On November 18, 2016, Plaintiff applied for disability benefits under Title II and Title XVI of the Act, alleging a disability onset date of August 5, 2014. (R. 20). Plaintiff was 26 years old on the alleged disability onset date. Plaintiff alleged disability due to a combination of physical and mental impairments including depression, anxiety, post-

traumatic stress disorder (PTSD), insomnia, restless leg syndrome, carpal tunnel syndrome, peripheral neuropathy, and migraine headaches. *Id*.

Plaintiff's claim was denied initially on March 10, 2017 and denied on reconsideration on May 9, 2017. *Id*. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (R. 20). The ALJ held a hearing on October 16, 2018, at which Plaintiff was represented by counsel. (*Id*.; R. 40). A vocational expert (VE) also testified at the hearing. The ALJ denied benefits in a decision dated November 5, 2018. (R. 17-37). On August 29, 2019, the Appeals Council denied Plaintiff's request for review. (R. 4). As a result, the ALJ's decision became the final decision of the Commissioner. *Id*. Plaintiff then timely appealed to the district court.

**III.    The ALJ's Decision**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps

3

one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that Plaintiff met the insured status requirements of the Act through September 30, 2018. (R. 22). Additionally, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 5, 2014, the alleged onset date. *Id*.

At step two, the ALJ found that Plaintiff suffers from the severe impairments of depression, anxiety disorder, and post-traumatic stress disorder (PTSD). (R. 22). The ALJ also found the following non-severe impairments: insomnia, restless leg syndrome, carpal tunnel syndrome, peripheral neuropathy, and migraine headaches. *Id*.

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ discussed application of the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a listing. (R. 14); *see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a moderate limitation in three of the four relevant domains—understanding, remembering, and applying information; interacting with others; and concentrating, persisting, or maintaining pace—and a mild limitation in the fourth relevant domain, adapting or managing oneself. (R. 24-25). Because Plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. (R. 25). The ALJ also considered the "paragraph C" criteria (for

4

"serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not present.

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with additional mental RFC limitations. *Id*. With respect to mental limitations, the ALJ found that Plaintiff is "able to perform simple tasks. She is able to relate to peers and supervisors on a superficial work basis. [Plaintiff] is able to adapt to a work situation, but she is unable to relate to the general public." *Id*.

Citing testimony by the VE at the hearing, the ALJ found that, given the Plaintiff's RFC, Plaintiff is capable of performing her past relevant work as a labeler (Dictionary of Occupational Titles (DOT) # 920.687-126, unskilled work, specific vocational preparation (SVP) level 2) and chicken cleaner (DOT # 525.687-074, unskilled work, SVP level 2), both as generally performed. (R. 30-31). Accordingly, the ALJ found Plaintiff not disabled at step four.

The ALJ proceeded to make additional, alternative findings at step five supporting the disability determination. (R. 31). Citing the VE's testimony, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 31-32). The VE testified that, with the RFC identified at step four, an individual could perform the requirements of representative occupations including:

- ***bottling line attendant***, unskilled work, SVP level 1, of which 65,000 such jobs exist in the national economy, DOT # 930.687-042;

- *conveyor bakery line worker*, unskilled work, SVP level 2, of which 30,000 jobs exist in the national economy, DOT # 524.687-022; and

- *agricultural produce sorter*, unskilled work, SVP level 2, of which there are 45,000 jobs in the national economy, DOT # 529.687-186.

(R. 32). Accordingly, the ALJ found that alternative grounds at step five support her determination that Plaintiff is not disabled. *Id.*

## IV. Discussion

Plaintiff argues that (1) the RFC determination is not supported by substantial evidence and (2) the ALJ's consistency findings are not supported by substantial evidence.[2]

### A. RFC Determination

#### 1. Manipulative Abilities

Plaintiff argues the ALJ erred in failing to include manipulative limitations in the RFC. The ALJ concluded that Plaintiff's carpal tunnel syndrome and peripheral neuropathy

---

[2] Plaintiff also argues that the ALJ erred at step two by failing to classify her carpal tunnel syndrome and peripheral neuropathy as severe impairments. At step two of the evaluative sequence, the ALJ must determine whether Plaintiff suffers from severe impairments. That is all that is required of the ALJ at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1521, 416.921; *see also* 20 C.F.R. §§ 404.1525(e), 416.945(e); *Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016), *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987), *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008).

Here, the ALJ found that Plaintiff has severe impairments at step two, as well as non-severe physical impairments, including peripheral neuropathy and carpal tunnel syndrome. The Court finds no error in the ALJ's findings at step two. Plaintiff's argument is more properly directed at the ALJ's findings concerning the ability to do any work, considering all of her impairments. Those issues are addressed *infra*.

are non-severe, and that as such, they do not limit her functioning. While the ALJ is not required to discuss every piece of evidence in the record, the ALJ must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The ALJ's decision addresses Plaintiff's medical records, including x-rays of Plaintiff's right wrist and right hand in January 2018, and a follow-up examination in July 2018. (R. 23-24). In January 2018, Plaintiff had x-rays of her right hand after an injury, but no fracture was found. *See id*. Orthopedist Fred Ruefer, M.D. expected Plaintiff's right thumb injury to resolve fairly rapidly and without difficulty. *See id*. On July 22, 2018, Plaintiff's grip strength was 4/5 bilaterally, with diffuse swelling of the right hand, as well as pain over the right Thenar eminence, but no pain over the tendons of the hands and it appeared that functioning of the hands was normal. (R. 23-24). The ALJ further explained that there was no involuntary movement or intrinsic muscle atrophy of the hands, and finger-to-nose and rapid alternating hand movements were normal.

Plaintiff contends that the ALJ improperly minimized or ignored evidence in the record showing weakness and "potential [c]arpal [t]unnel [s]yndrome" in her right hand. (Doc. 13 at 6). Plaintiff notes that an October 18, 2016 examination revealed positive Phalen's and Tinel's signs (indicative of carpal tunnel syndrome), swelling of Plaintiff's right hand, subjective hand weakness, and generalized tingling in both hands. (R. 387). But the ALJ's decision addressed evidence from this examination and noted, further, that Plaintiff reported that she had been performing handyman services for the elderly. (R. 23). The ALJ also explained that after that date, Plaintiff did not receive any other treatment for

7

her hand-related complaints until 2018, after Plaintiff had injured her right thumb. (R. 23). Moreover, while Plaintiff was referred for carpal tunnel surgery consultation, the record indicates that she never followed up on the referral (although Plaintiff alleges that she was unaware of it). (R. 23).

Plaintiff reported experiencing numbness in her hands (particularly her right hand), tingling, and pain. (R. 23-24). However, at step four, Plaintiff has the burden to prove that any alleged hand impairment "significantly limit[ed]" her ability to perform "basic work activity." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). The responsibility for determining the weight of the evidence rests with the ALJ. Where substantial evidence supports the ALJ's decision, the fact that Plaintiff would weigh the evidence differently does not constitute reversible error. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) (on appeal, court reviews only sufficiency of evidence, not its weight); *Lax*, 489 F.3d at 1084 (court may not reweigh evidence and displace agency choice between two fairly conflicting views).

Here, substantial evidence supports the ALJ's finding that Plaintiff's RFC did not require manipulative limitations. The objective evidence does not demonstrate any functional limitation beyond slightly reduced strength in Plaintiff's hands, and the ALJ reasonably concluded that Plaintiff's carpal tunnel syndrome and peripheral neuropathy would not significantly limit her ability to perform basic work activity. Consistent with this finding, no physician, treating or otherwise, indicated that Plaintiff would experience any manipulative limitations. Reviewing physician Karl Boatman, M.D. also concluded that Plaintiff's hand impairments are non-severe. (R. 102).

Accordingly, the ALJ's explanation is reasonable and supported by substantial evidence. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also Adams v. Colvin*, 553 F. App'x 811, 814-15 (10th Cir. 2014) (unpublished) (holding ALJ did not err in failing to include restrictions related to shoulder injury where record did not indicate any functional limitation); SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996) ("[W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."). Nothing further was required, and the Court may not re-weigh the evidence. *See Cowan v. Astrue*, 552 F.3d 1185 (10th Cir. 2008) ("[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's.") (quotation omitted).

Additionally, Plaintiff contends that the ALJ erred in denying Plaintiff's request (through his attorney) to admit recent electromyography (EMG) test results into the record. (*See* R. 40-41). "We will find a failure to develop the record where (1) the claimant has in some fashion raised the issue sought to be developed by demonstrating a reasonable possibility that a severe impairment exists, and (2) the available records do not supply enough information to make an informed decision about the vocational effect of the asserted impairment." *Yahola v. Apfel*, 139 F.3d 913, 1998 WL 67291, at *2 (10th Cir. 1998) (unpublished) (internal citations and quotation marks omitted); *see also Hawkins*, 113 F.3d at 1167.

While it may have been preferable, in the interest of thoroughness, to admit the EMG testing evidence into the record, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *e.g.*, *Scull v Apfel*, 221 F.3d 1352, 2000 WL 1028250, at *1 (10th Cir. 2000) (unpublished) (disability determinations turn on the functional consequences, not the causes of a claimant's condition). Furthermore, "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Here, Plaintiff has not included, cited, or summarized any information from the EMG results, nor has she shown that the available record was deficient with respect to the functional impact of her hand-related impairments. The Court cannot reverse a determination by the ALJ that is supported by substantial evidence—such as here—based on mere speculation, and without any identifiable deficiency in the existing record. *See Hawkins*, 113 F.3d at 1167. In her decision, the ALJ explained that the EMG results were not needed, as the existing medical evidence demonstrates that Plaintiff's hand functioning is not significantly limited. (R. 23-24). This explanation is reasonable and satisfied the ALJ's duty to ensure the record was sufficient to make an informed decision. Accordingly, the Court cannot find reversible error in the ALJ's refusal to admit the EMG records.

**2. Mental Abilities**

Plaintiff argues that the ALJ ignored evidence of depression, anxiety, PTSD, and paranoia. Plaintiff testified that she rarely leaves her room, spends part of the day sleeping, has panic attacks every other day, and "zones out" when someone talks to her. (Doc. 13 at 8). Based on this evidence, Plaintiff contends that a person with those impairments would not fit into the RFC that the ALJ found or any substantial gainful activity on a full-time basis.

In order to survive judicial review, an ALJ's findings need only be legally sound and supported by substantial evidence—a threshold that is "not high." *Biestek*, 139 S. Ct. at 1154. In assessing Plaintiff's mental abilities, the ALJ relied on opinions from the state agency psychologists, who are "highly qualified experts in Social Security disability evaluation" and assessed the same mental RFC as the ALJ. (R. 82, 106). 20 C.F.R. § 404.1513a(b)(1). No treating provider opined that Plaintiff would experience any work-related mental limitations. Additionally, Plaintiff asserted, as recently as May 17, 2018, that as a result of her medications, her anxiety, depression, and sleep had all improved. (*See* R. 28).

In light of this evidence, the ALJ reasonably assessed an RFC for work involving simple tasks, no interaction with the public, and only superficial contact with peers and supervisors. The ALJ's findings as to Plaintiff's mental RFC are supported by substantial evidence.

### B. Consistency Assessment

Plaintiff asserts that the ALJ failed to follow the proper legal standards in determining the consistency of Plaintiff's statements regarding her pain and other symptoms with the objective medical evidence in the record. In evaluating a claimant's statements regarding pain, the ALJ "must consider (1) whether [a c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the c]laimant's pain is in fact disabling." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (internal citation omitted).

> When determining the credibility of pain testimony, the ALJ should consider such factors as "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1489 (internal citations omitted).

The ALJ must explain "the link between the evidence and credibility determination." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Under agency regulations, the ALJ's decision must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." SSR 16-3p. However, "[c]redibility determinations

are peculiarly the province of the finder of fact"—that is, the ALJ, not the court. *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Kepler*, 68 F.3d at 391). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *see also* SSR 16-3p, 2016 WL 1237954.[3]

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (R. 26). In explaining this determination, the ALJ addressed multiple relevant factors. For example, Plaintiff has continued to take psychotropic medications. (R. 28). Multiple examinations showed Plaintiff was stable, with thoughts clear and organized, no delusions, normal speech, and fair judgment and insight. (R. 27-28). Although Plaintiff was not always compliant with her medications, the record indicates that when she was compliant with her treatment regimen, her anxiety and depression improved. (R. 28).

---

[3] The agency no longer uses the term "credibility" to describe the ALJ's analysis of subjective symptoms. *See* SSR 16-3p, 2017 WL 5180304 (the Commissioner "eliminat[ed] the use of the term 'credibility' from [the] sub-regulatory policy, as [the] regulations do not use this term," and "subjective symptom evaluation is not an examination of an individual's character"). However, the standard of review of the ALJ's consistency analysis is the same as when the agency used the term "credibility." *See, e.g., Zhu v. Comm'r, SSA*, __ F. App'x __, 2021 WL 2794533, *5, n.7 (10th Cir. Jul. 6, 2021).

Finally, the ALJ noted that Plaintiff interacts daily with other individuals and reported no difficulty getting along with others. (R. 29). Plaintiff's statements also indicate that she has the concentration and memory enough to read every day. *Id*. The ALJ found these statements inconsistent with the severity of symptoms alleged in other statements. *Id*. Specifically, the ALJ concluded that the evidence was inconsistent with Plaintiff's claims that difficulty interacting with others prevents her from working. Additionally, the ALJ included limitations in the RFC determination.

Thus, the ALJ explained the specific evidence she considered in her consistency analysis and provided valid reasons for her determination that Plaintiff's symptoms are not as disabling as alleged. The ALJ fulfilled her duty under *Kepler*, and substantial evidence supports the ALJ's conclusion regarding Plaintiff's symptoms. *See Keyes-Zachary v. Astrue*, 695 F.3d at 1169 (10th Cir. 2012) (finding ALJ's discussion adequate where he "listed many of [the claimant's] specific factual assertions, often following them by a qualifying statement to indicate where he believed her testimony was contradicted or limited by other evidence in the record").

V.   **Conclusion**

The undersigned finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

IT IS SO ORDERED this 7th day of September, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge